## STATE *v.* STURGESS.

### SALMON FISHERIES.

The act of the Legislative Assembly, entitled an "An Act to Protect Salmon," approved October 25, 1880, does not apply to the Columbia river.

APPEAL from Multnomah.    The facts are stated in the opinion.

*J. F. Caples, District Attorney, M. F. Mulkey and W. H. Adams,* for appellant.

*H. T. Bingham and James Gleason,* for respondent.

By the Court, WATSON, J.:

On June 4, 1881, the respondent was indicted by the grand jury of Multnomah county for catching salmon fish in the Columbia river, contrary to the act of the legislative assembly entitled "An Act to Protect Salmon," approved October 25, 1880. He was tried on this indictment in the circuit court for said county, and found guilty as charged. The court, however, arrested judgment on motion of the respondent, and the state excepted and appealed.

The facts established at the trial, as appears by the bill of exceptions, were that the salmon were caught at eighteen minutes after seven o'clock, P. M., Sunday, May 29, 1881, in the Columbia river, beyond the middle channel, and on the Washington Territory side, within the extended north and south boundary lines of Multnomah county, and that by the laws of Washington Territory, of which territory respondent was a citizen, the act complained of was no offense.

The question presented at the outset is, whether the act, upon which the indictment was found, was intended to apply to the Columbia river. If it was not, a consideration of the other points is useless. This act makes no mention of any former act on the subject, and contains no words of repeal.

In terms it prohibits catching salmon " in any stream of water, bay or inlet of the sea, or river of this state, with net, seine or trap, at any season of the year, between sunset on Saturday and sunset on the Sunday following, of each and every week." The penalty provided for any violation of the act was a fine of not less than fifty, nor more than one hundred and fifty dollars, and imprisonment in the county jail not less than five nor more than ten days, and concurrent jurisdiction was conferred upon justices of the peace.

Substantially, this is the whole enactment. But at the time this act was passed, there was an act in force containing provisions on the same subject, and applying expressly and exclusively to the Columbia river and its tributaries. This latter act was entitled "An Act to Regulate Salmon Fisheries on the Waters of the Columbia River and its Tributaries," and was approved October 16, 1878. It contained the following preamble:

"Whereas, the Legislative Assembly of the Territory of Washington, at the last session thereof, passed an act entitled 'An Act Regulating Salmon Fisheries on the Waters of the Columbia River,' approved November 8, 1877. And, whereas, the 8th and last section of said act is as follows, to-wit:

' Section 8. No section, proviso or part of this act shall be considered as valid or operative until the legislature of the state of Oregon shall enact a similar section, proviso or act, in whole or in part, and from and after the passage of such a law by the state of Oregon, such parts thereof as shall be so enacted, shall immediately go into full force and effect, and the governor of this territory is hereby requested to transmit an attested copy of this act to the governor of the state of Oregon, requesting him to submit it to the legislature of that state.' Therefore, etc."

Another act, passed at the same session, and approved the same day, entitled "An Act to Create the Office of Fish Commissioner for the Columbia River and its Tributaries," etc., contained a similar preamble. Like the former, its provisions

applied only to the Columbia river and its tributaries. By the first mentioned act of October 16, 1878, catching salmon in the Columbia river or its tributaries, by any means whatever during the months of March, August and September, or during the weekly close times, in the months of April, May, June and July; that is, between the hours of six o'clock P. M., on Saturday, and six o'clock P. M., of the Sunday following, during said months, was prohibited under penalty of from five hundred to one thousand dollars for the first offense, and one thousand dollars for each subsequent offense, with imprisonment in the county jail not exceeding one year added, in the discretion of the court.

The act also contains many other particular provisions, devised evidently for the protection of salmon, for any violation of which the same penalty is denounced. The statute is comprehensive in scope, explicit in details, and seems to make ample provision on the subject of protection for salmon in the Columbia and its tributaries. Its provisions are, we believe, in substance, if not in form, the same as those contained in the act of the legislative assembly of Washington territory, referred to in the preamble. Upon these facts the respondent contends that the act of October 25, 1880, should not be held to apply to that river, or its tributaries.

While we have experienced no little difficulty in reaching a perfectly satisfactory conclusion upon the matter, it is our conviction that the position taken by respondent is the correct one, and should be sustained. The previous act of October 16, 1878, was local in its operation, and, as we have seen from its preamble, and the correspondence of its provisions with those enacted by the legislature of Washington Territory, by virtue of her concurrent jurisdiction upon the same subject, was unquestionably framed in view of peculiar circumstances and considerations, not affecting the other rivers or waters of the state. It was a local act and established such regulations for the protection of salmon in the particular locality embraced by it, as the legislature deemed

necessary and expedient, in view of the peculiar condition of the Columbia river, as being not only a common boundary between the state of Oregon and Washington Territory, but the common territory of both, and equally subject to the jurisdiction and laws of both. (*The Annie M. Small*, 2 Sawyer, 226.)

From the partial enumeration already given of the provisions of the two acts, it is quite apparent that if the one last enacted should be held to extend over the Columbia and its tributaries, a conflict in several particulars would be developed; repeals by implication in these respects would follow, symmetry would be lost, inconsistencies and incompatibilities introduced, and that uniformity and correspondence in legislation, which the legislatures both of this state and Washington Territory were so careful to secure in the only instances where they have professed to exercise their concurrent author-ity, would be destroyed to such a degree that the citizens of neither could find in the laws of their own sovereignty safe directions for their conduct upon the common domain. The case before us is but a fair example of the evil consequences of such an application. But it is claimed that the act under examination applies, in express terms, to " every river of this state," and that the Columbia and its tributaries are such; therefore there is left no room for construction.

Without attempting to pass upon the correctness of the premises here assumed, we think it may be conceded, and still the conclusion not follow. These several acts should be reviewed together as one enactment in determining their respective applications and effect, given to all the provisions of each, if possible, upon any rational construction. (Potter's Dwarris on Statutes and Constitutions, 189.) A general statute will not repeal a particular statute previously enacted, simply because it contains inconsistent provisions. (Potter's Dwarris on Statutes and Constitutions, 272, 273; *Fosdick* v. *Village of Perrysburg*, 14 Ohio St., 472; *Pearce* v. *Atwood*, 13 Mass., 342; *St. Martin* v. *New Orleans*, 14 La., Ann.,

113; *Nichols* v. *Bertram*, 3 Pick., 342; *Felt* v. *Felt*, 19 Wis., 208; *State* v. *Goetze*, 22 Wis., 363; *State* v. *Bishop*, 41 Mo., 16.

It seems well settled by these authorities, that the particular subject covered by the previous statute, although embraced by the general description in the subsequent statute, will be excepted from its operation when necessary to prevent a repeal of the former by implication. This principle is decisive of the question under consideration, in our judgment, and virtually disposes of the whole case before us. The act proved against the respondent was not a crime under any provision of the particular statute of October 16, 1878, or any other statute in force on the Columbia river. The judgment of the court below must therefore be affirmed.

Judgment affirmed.